Ehret Estate.

Argued May 3, 1967. Before BELL, C. J., MUSMAN-
NO, JONES, EAGEN, O'BRIEN and ROBERTS, JJ.

*Philip A. Brégy,* with him *Herbert Bass,* and *Mac-
Coy, Evans & Lewis,* for appellant.

*Harry Polish,* guardian and trustee ad litem, for
appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 14,
1967:

This is an appeal by Provident National Bank,
Trustee, from the Decree of the Orphans' Court of
Philadelphia County refusing to allow it interim com-
pensation on principal.

In lieu of evidence, the facts were stipulated* and
submitted to this Court as a statement pursuant to
Supreme Court Rule 53.

---

* We heartily approve of this practice and recommend its adop-
tion by members of the Bar and other litigants.

586

Michael Ehret died February 17, *1913,* leaving a will and codicils which were duly probated. In Item SEVENTH of his will he gave all his real estate (subject to his widow's life estate in one-third thereof) and two-thirds of his residuary personal estate to his trustees, to hold in trust until the expiration of twenty-one years after the death of his last surviving child. The trustees were directed to pay the income to his children and to the descendants of his dead children per stirpes who were living at each distribution date, and upon expiration of the trust to pay the principal to his then living descendants, per stirpes. These provisions were subject to Item NINTH, in which testator gave each of his children a power to appoint by will his or her stirpal share of income and principal among his or her issue. Factually, the trust will continue *until July 15, 1985*—twenty-one years after the death of the last survivor of testator's children.

On December 12, *1919,* Land Title Bank & Trust Company (now Provident National Bank) was appointed substituted trustee. It was not an executor of Ehret's will and (except for a commission on the sale of real estate) has never yet received any compensation or commission on principal for its services as trustee. It filed a trustee's account, which shows assets having a corrected carried account value of $746,550.-81; at the time of the audit, these assets had a market value of $1,020,958.16. The Bank claimed an *interim* commission\* on principal in the amount of $10,000.\*\* This was for *ordinary* services only, and did not in-

---

\* Compensation is more accurate, but "commission" is almost always used by lawyers, Judges, Legislatures, fiduciaries and accountants.

\*\* For the purposes of this case, the parties have agreed that the $10,000 interim commission claimed by the substituted trustee, Provident National Bank, is, if legally permissible, fair and reasonable.

clude or represent any compensation or commission for extraordinary services. The guardian ad litem objected to the payment of any interim commission, and the auditing Judge disallowed this credit in the account. His adjudication was confirmed by the Court en banc,* whereupon Provident National Bank, we repeat, took this appeal.

The sole issue before this Court is whether a trustee under a testamentary trust created prior to 1945, which was not an executor, may receive for its ordinary services as trustee an *interim* commission on principal.

With respect to a trust created prior to 1945, the law has been thus clearly established: Unless a testator or settlor clearly provides otherwise—(1) a corporate or an individual fiduciary who was *both executor and trustee* was entitled, under the Act of 1864 and the Act of 1917, infra, to only one commission on principal for its *ordinary* services in *both capacities,* and this was payable upon the termination of its services as executor; (2) the Act of April 10, 1945, P. L. 189, which specifically repealed (a) §45 of the Fiduciaries Act of June 7, 1917, as amended, and (b) §§2, 5(1), 5(2) and 6 of the Act of May 1, 1953, P. L. 190, 20 P.S. §3274, et seq., which permitted (under certain specified circumstances) payment of more than one commission on principal to a fiduciary who served as both executor and trustee in wills or trusts created prior thereto, cannot Constitutionally be retroactively applied; (3) *such Constitutional limitations* as well as the statutory restrictions or prohibitions contained in the Act of 1864 and of 1917 *have no application* (a) to fiduciaries who were entitled even, before the termination of the trust, to an *interim* commission on principal

---

* All the Judges of the Orphans' Court of Philadelphia agree that the preferable rule would be to allow payment of fair and reasonable interim commissions on principal and would adopt this practice if they had authority to do so.

for *unusual or extraordinary* services, or (b) to fiduciaries who resign or die before the termination of the executorship or trusteeship, as the case may be: *Williamson Estate,* 368 Pa. 343, 82 A. 2d 49, and cases cited therein; *Scott Estate,* 418 Pa. 332, 211 A. 2d 429.

The lower Court, in disallowing the interim commission, relied upon *Williamson Estate,* 368 Pa., supra, and *Scott Estate,* 418 Pa., supra, and the broad general language used in each of those cases.

In *Williamson Estate,* 368 Pa., supra, this Court decided that where the *same fiduciary is both executor and trustee* and had received, for its *ordinary* services in both capacities, a commission on principal at the termination of its executorship, (1) it could not thereafter receive an interim or an additional commission on principal for its *ordinary* services in its dual capacity, but (2) it could receive *an additional or interim* commission on principal for *extraordinary or unusual services.* This Court further held that the Act of April 10, 1945, supra—which repealed §45 of the Fiduciaries Act of June 7, 1917, supra (which section had prohibited the *same* fiduciary from receiving a commission on principal as executor and another commission as trustee)—may not be applied retroactively, and a fiduciary who was *both* executor and trustee and had received a commission on principal as executor prior to the enactment of the Act of 1945 may not be paid an *additional* commission on principal *for its ordinary services as trustee.* The Court said (pages 350-351, 352-353) : "We have repeatedly decided that *except in extraordinary or unusual circumstances* a trustee is to be compensated *only at the termination of the trust or at the ending of the trustee's connection therewith:** Bosler's Estate, 161 Pa. 457, 29 A. 57; Thouron's Estate, 182

---

* Italics throughout, ours.

Pa. 126, 37 A. 861; Penn-Gaskell's Estate (No. 1), 208 Pa. 342, 57 A. 714; Snyder Estate, 346 Pa. 615, 31 A. 2d 132; Kennedy Trust, 364 Pa. 310, 72 A. 2d **124.** No *interim* commission on principal is *originally* allowable under the law so declared. Where, however, extraordinary services are rendered, or unusual labor is entailed, an *immediate* allowance [an interim commission] is permissible: Thouron's Estate, 182 Pa. 126, 37 A. 861; Penn-Gaskell's Estate (No. 1), 208 Pa. 342, 57 A. 714; Powers' Estate, 58 D. & C. 379.

"The Legislature by the Act of March 17, *1864,* P. L. 53, provided: 'That in all cases, where the *same* person shall, under a will, fulfill the duties of executor, and trustee, it shall not be lawful for such person to receive, or charge, more than one commission. . . .' This provision was re-enacted by section 45 of the Fiduciaries Act of June 7, 1917, P. L. 447. Such statutory provision was enforced by the appellate courts: Hill's Estate, 250 Pa. 107, 95 A. 426; Spark's Estate, 127 Pa. Superior Ct. 364, 193 A. 449, affirmed in 328 Pa. 384, 196 A. 48. This section of the Fiduciaries Act was repealed by the Act of April 10, 1945, P. L. 189, and which appellant contends operates retroactively upon trusts already in operation.

". . . The Act of April 10, 1945, supra, repealing section 45 of the Fiduciaries Act of 1917, supra, *which prohibited the same individual* from receiving commissions both as executor and trustee may not be applied retroactively. Appellant, the corporate fiduciary, accepted this trust in 1930 under the law as it then existed. It was paid in full (except for commission thereafter received by it on income it received and distributed). Such acceptance fixed the rights, liabilities, exemptions, defenses and expectations of both life tenant and remaindermen. Their rights were vested under what necessarily is an implied contract. Such rights having vested, and appellant having been paid in full,

590

the imposition of additional compensation under a retroactive interpretation of this statute would be unconstitutional under the Fourteenth Amendment of the United States Constitution: Farmers National Bank and Trust Company v. Berks Co. R. E. Co., 333 Pa. 390, 5 A. 2d 94; Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, 55 A. 2d 521; Crawford Estate, 362 Pa. 458, 67 A. 2d 124; Borsch Estate, 362 Pa. 581, 67 A. 2d 119; McKean Estate, 366 Pa. 192, 77 A. 2d 447."

*Scott Estate*, 418 Pa., supra, *did not* involve an *interim* commission. The principal question raised in *Scott Estate* is thus stated (page 334): "May testamentary trustees who, in 1941, were paid a commission on principal at the audit of their account as executors, receive *at the termination of the trust* in 1963, an *additional* commission on principal for their *ordinary* services as trustees?" The Orphans' Court disallowed any additional compensation, basing its decision on the Act of 1917 and this Court's construction of the Act of April 10, 1945. We affirmed, and said (pages 335-336, 336-340): "Section 45 of the Act of June 7, 1917, was the law when testator drew his will and at the time of his death, and at the time the executors received their above mentioned compensation on principal. Section 45 provided in clear language that in all cases where the *same* person was both executor and trustee, such fiduciary could not receive more than one commission on principal for his services in the double capacity of executor and trustee.

"Five years after Scott's death and 18 years before the termination of Scott's testamentary trust, §45 of the Act of June 7, 1917, supra, was expressly repealed by §1 of the Act of April 10, 1945 (as amended), P. L. 189. Moreover, that Act provided in §2: 'This act shall take effect immediately upon its final enactment.' Whatever else the 1945 Act did, it is indisputable that *it repealed the 1917 prohibition against a fiduciary re-*

*ceiving more than one commission on principal for his services in the double capacity of executor and trustee.*

". . . Neither the appellants nor the appellee nor the Judges of the Orphans' Court agree as to *exactly* what Williamson Estate decided, and what parts thereof were dicta and should not be followed, or in any event should be overruled. In Williamson Estate, a trust company, which was *both executor and trustee,* had received a commission on principal at the audit of its executor's account. The trust company thereafter filed a trustees' account in which it sought to obtain (in a test case) *interim* commissions on principal, prior to the termination of the trust. On appeal, this Court (1) dissapproved and disallowed the interim commissions, but (2) also held that the Act of 1945 could not be applied *retroactively* to allow the *same* fiduciary additional commissions on principal for its *ordinary* services.

"With respect to its second point, the Court said (page 352) : '. . . The Act of April 10, 1945, supra, repealing section 45 of the Fiduciaries Act of 1917, supra, which prohibited the *same* individual from receiving commissions *both as executor and trustee may not be applied retroactively.* Appellant, the corporate fiduciary, accepted this trust in 1930 under the law as it then existed. It was paid in full (except for commission thereafter received by it on income it received and distributed). Such acceptance fixed the rights, liabilities, exemptions, defenses and expectations of both life tenant and remainderman. . . .'

"Appellant contends that this part of the Court's Opinion in Williamson Estate was dictum* and should be repudiated or overruled.

---

"* There are two views, each supported by a number of decisions of this Court, as to what constitutes dictum—one a broad view and the other a narrow or restrictive view: See: O'Neill v. Metropolitan Life Ins. Co., 345 Pa. 232, 240, 26 A. 2d 898; Cassell's

"Irrespective of whether this part of the Williamson Estate Opinion was or was not dictum, we find it persuasive and applicable. It is clear as crystal that the corporate trustee in that case, as in this case, accepted a commission at the termination of the executorship which the applicable Act of 1917, in the clearest imaginable language stated was to be 'a *full compensation* [on principal] for his services in the *double capacity* of executor and trustee' *and that this provision was to apply in all cases where the same person fulfilled the duties of executor and testamentary trustee.* To now allow the Act of 1945 to abrogate and nullify what the corporate trustee with its eyes open, had been paid and had accepted in 1941 as full compensation on principal for all its ordinary services *in its dual capacity of executor and trustee,* would be to make a mockery of the law and of the rights of all parties, beneficiaries and fiduciaries alike. This we are unwilling to do.

"After the Williamson decision, the legislature enacted the Act of May 1, 1953, P. L. 190, 20 P.S. §3274 et seq. That Act pertinently provides: 'Section 2.— Whenever it shall appear *either during the continuance** of a trust or at its end, that a fiduciary has rendered services *for which he has not been fully compensated,* the court having jurisdiction over his accounts shall allow him such original or *additional compensation out of the trust income or the trust prin-*

Estate, 334 Pa. 381, 384, 6 A. 2d 60; Commonwealth v. Almeida, 362 Pa. 596, 603, 68 A. 2d 595; New York Central & H. R.R. Co. v. Price, 159 Fed. 330, 332; Schuetz's Estate, 315 Pa. 105, 172 A. 865; Commonwealth v. Moyer and Byron, 357 Pa. 181, 53 A. 2d 736; Commonwealth v. Drum, 58 Pa. 9. For a lengthy analysis and discussion of dictum, see Pew Trust, 411 Pa. 96, 104-105, 191 A. 2d 399."

"* This would allow both interim and additional compensation (commissions) out of income or principal or both, subject, however, to the provisions and exceptions contained in §4 of the Act."

*cipal or both,* as may be necessary to compensate him for the services theretofore rendered by him.

" 'Section 5.—This act shall apply: (1) To all services *heretofore rendered* by any fiduciary; (2) To all services *hereafter rendered* by any fiduciary *heretofore appointed;* (3) To all services hereafter rendered by any fiduciary hereafter appointed in a trust heretofore created; and (4) To all services hereafter rendered by any fiduciary of a trust hereafter created.

" 'Section 6.—If the Constitution of the United States or of this Commonwealth prevents the application of this act to services falling in one or more of the four categories listed in section 5, hereof, the act shall nevertheless apply to services falling in the other categories or category.'

"We hold that Williamson Estate directly controls the instant case and that the 1953 Act stands on the same footing as the 1945 Act. [Under the aforesaid facts, it cannot be applied retroactively.]

"In the light of hindsight, it appears that the compensation which a corporate fiduciary received in 1941 for all its services as executor, and its future services as trustee of a trust which covered a period of 20 years or more was inadequate and unfair because of the long duration of the trust and the greatly increased cost of operation. However, all the parties concerned, including the present corporate fiduciary and the individual fiduciaries and the beneficiaries, knowingly took this chance—they all knew that the *Statute* (Act of 1917) clearly and unambiguously fixed the present and future rights of *all executors-trustees* to a *single* commission on principal, which such fiduciaries received and agreed to accept as *full* compensation for their combined executor and trustee fiduciary services, past, present and future. If the compensation which the fiduciaries received in 1941 as payment in full for all their ordinary services as executors and trustees

can now be changed and increased, must not the converse be true—must not the executor-trustee fiduciaries of all pre-1945 testamentary trusts which terminated in a short time because of the sudden and unexpected death of a life tenant repay to the beneficiaries the unearned compensation they had received! Moreover, while a corporate fiduciary can probably prove its present costs as contrasted with its costs 25 years ago, how, *at this late date*, can such a fiduciary prove what service it rendered during a lengthy 25-50 year trust, when so many persons who handled the trust estate will have died or be unable to accurately remember details?*"

An analysis will make clear the material difference between this case and *Scott Estate* and *Williamson Estate,* supra—an interim commission relates only to the time of payment.

In *Williamson,* the trustee had asked not only for an *interim* commission but had asked also for approval to make an annual charge based on percentage as opposed to the established rule in Pennsylvania that a trustee's compensation depends upon the character and extent of the labor, the responsibility incurred and the results obtained. Moreover, the trustee, having received compensation or commission on principal for his services as executor and for his future services as trustee, was asking for a retroactive repeal of the statutorily prohibited double commission rule.** The Court refused each and all of this on the grounds that repeal of the *double commission* rule would violate beneficiaries' Constitutionally vested rights. However, *Williamson Estate did not decide or preclude as Unconstitutional the retroactive modification of the interim commission rule,* since this does not involve addi-

---

"* The many bank mergers which have taken place will often increase these difficulties."

** Under the Act of April 10, 1945, P. L. 189.

tional compensation but *merely the time* for payment. Indeed, the Court referred to and approved various exceptions which over the years had been engrafted by the Courts on the double commission and the interim compensation rules, such as (1) allowance of compensation at the end of a trustee's connection with the trust (even though the trust continues) and (2) where extraordinary services have been rendered before the expiration of the trust.

In *Scott,* the only issue involved was whether there could be Constitutionally a retroactive repeal of the double commission (compensation) rule in pre-1953 trusts; *the issue of interim commissions was not therein involved* because the trustee's claim was made at the termination of the trust. This Court reiterated the holding in *Williamson* that the Act of 1945, which repealed the double commission rule, could not Constitutionally be applied retroactively, nor could the Act of 1953, which went beyond mere repeal and affirmatively allowed the payment of double commissions on principal. We repeat, interim commissions were not involved in *Scott Estate.*

The instant case, where the corporate trustee was never an executor and has never received any compensation or commission on principal for its services as trustee, (1) is clearly distinguishable *on its facts* from *Williamson Estate* and from *Scott Estate,* supra,* and (2) the broad language in these cases must be limited to the facts therein, and (3) there is no statute which directly and *specifically* prohibits an *interim* commission on principal for *ordinary* services *under the facts here present.* On the contrary, the 1953 Act provided for the allowance of an interim commission. Even before these recent Acts of 1945 and 1953, the

---

* And from *Coulter Estate,* 379 Pa. 209, 108 A. 2d 681, which was not referred to by the parties or by the Court below.

statutory prohibitory rule was made for all practical purposes and effects a general rule of Court. However, this general rule was early limited or modified by this Court to permit, before the termination of the trust, the payment of an *interim* commission on principal (a) for ordinary services in the case of an individual who resigned or died prior to the termination of the trust and (b) to a fiduciary who was a trustee or was both executor and trustee for unusual or extraordinary services. See and compare *Thouron's Estate,* 182 Pa., supra (1897) ; *Penn-Gaskell's Estate (No. 1),* 208 Pa., supra (1904) ; *Conner's Estate,* 21 Dist. 107 (O.C. Philadelphia, per GEST, J.) ; *Powers' Estate,* 58 Pa. D. & C. 379 (O.C. Philadelphia, per HUNTER, J.) ; *Mc. Caskey's Estate,* 307 Pa. 172, 182, 160 Atl. 707 ; *Bosler's Estate,* 161 Pa. 457, 29 Atl. 57 ; *Snyder Estate,* 346 Pa. 615, 31 A. 2d 132 ; *Mylin's Estate,* 32 Pa. Superior Ct. 504.

It is a matter of common knowledge that it has been the long and well-settled custom and practice for Orphans' Courts not to allow *interim* commissions on principal\* for *ordinary* services by a trustee, even where the fiduciary had not previously received a commission on principal, and this practice had become sub silentio a rule of law.

Sir EDWARD COKE pointedly stated: "Reason is the life of the law," to which I add: "Where reason faileth, both Justice and Respect for the Law are imperiled."

This Court has stated, particularly in recent years,\*\* that where the reason for a judicially created rule or practice no longer exists, and modern circumstances

---

\* For the reason that such a practice would or might greatly deplete the principal of the trust.

\*\* For outstanding examples, see *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. 2d 193 ; *Catherwood Trust,* 405 Pa. 61, 173 A. 2d 86.

plus equity and Justice demand its alteration or abrogation, it can and should be changed or abandoned in cases where no one's personal rights or vested property interests will be abrogated or affected. We add that, absent a statute or a controlling provision by a testator or a settlor, *there is no vested right* in a beneficiary in the *time* of payment of a commission.

Several Justices of this Court (including the present writer) and the Legislature and the Orphans' Court of Philadelphia have from time to time pointed out the unfairness of this harsh rule and their desire to see it eliminated or further modified. Realistically speaking, it is a matter of common knowledge that financial and modern conditions have changed so greatly since the Act of 1864 and the Act of 1917, supra, that we should limit *Williamson Estate,* and *Scott Estate,* and *Coulter Estate,* supra, to their facts, and under our King's Bench powers, and under the powers granted to us by the Act of May 20, 1891,* P. L. 101, 12 P.S. §1164, should allow, if earned, the payment of a fair and reasonable *interim* commission on principal to a (non-executor) trustee of a long-term trust. Without such a policy rule to cope with modern conditions and to "make both ends meet," how otherwise in these days can a corporate trustee continue to exist as a fiduciary, and why otherwise would an individual trustee, or indeed a bank or trust company, ever accept a long-term trust?**

Decree reversed, costs to be borne equally by (1) the corporate trustee, and (2) the principal of the trust estate.

---

* "Section 2. The Supreme Court shall have power in all cases to affirm, reverse, amend or modify a judgment, order or decree appealed from, and to enter such judgment, order or decree in the case as the Supreme Court may deem proper and just. . . ."

** This decision is not to be considered an approval of *annual* commissions on principal to a fiduciary for either his or its ordinary or extraordinary services.

Mr. Justice EAGEN concurs in the result.

Mr. Justice COHEN took no part in the consideration or decision of this case.

_____

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

Whatever may be the wisdom of our holdings in *Scott* and *Williamson*,* except perhaps in an unjustifiably broad reading, they in no way control the question of interim commissions. No retroactivity problem is here presented for interim commissions relate only to the *time* of payment, a matter in which the beneficiaries have no constitutionally vested interest.

I wish to add one word of caution to the majority opinion. Interim commissions should be allowed only on the basis of the worth of the services rendered and should not exceed the total value of the services rendered from the inception to the conclusion of the period of trusteeship. See Comment, "The Constitutionality of Retroactive Trustee Compensation Statutes in Pennsylvania," 114 U. Pa. L. Rev. 530, 537 (1966): "The purpose of awarding an interim principal commission is to compensate the trustee for his services more promptly than was the practice under the terminal principal commission rule. This change is especially advantageous to the *individual trustee,* who will certainly be more willing to assume his duties knowing that he, rather than his estate, will reap the fruits of his labor. In the case of the retroactive interim principal commission statute, the remainderman has no standing to complain. *The trustee is entitled to a principal commission and the fact that it is paid in*

_____

* Our decisions clearly represent a departure from the great weight of authority. See 3 Scott, Trusts (2d Ed. 1956) §242, at 1928 (citing cases from California, Michigan, New Jersey and New York); King, "Uniform Principal and Income Act, §5: Constitutionality of Its Retroactive Application," 1960 Wash. L. Quarterly 339, 346-47.

*more than one installment would not seem to affect the total amount of the award.* Nor should the slight reduction of income resulting from the early award of a principal commission defeat any reasonable expectations of the income beneficiary, since the amount of income commissions in Pennsylvania has always been at the discretion of the court and subject to variation." (Emphasis supplied.)

Mr. Justice JONES joins in this concurring opinion.